# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 4, 2008 Session

## STATE OF TENNESSEE v. CRAIG ABSTON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-04759     J.C. McLin, Presiding Judge**

---

**No. W2007-00019-CCA-R3-CD - July 10, 2009**

---

Defendant, following a jury trial, was convicted of one count of second degree murder and two counts of attempted second degree murder. The trial court sentenced Defendant to twenty years for Count 1, second degree murder, twelve years for Count 2, attempted second degree murder, and eight years for Count 3, attempted second degree murder. Counts 1 and 2 were ordered to run concurrently to each other but consecutively to Count 3 for a total effective sentence of twenty-eight years. On appeal, Defendant argues: (1) the trial court erred in its remarks to the jury venire; (2) the trial court erred in allowing the testimony of Sergeant Berryman that Defendant had two gold teeth at the time he was interviewed; and (3) the trial court erred in imposing consecutive sentencing. After a thorough review of the record, we affirm the convictions. We reduce the sentence in Count 2 from twelve years to eight years. Further, we reverse the judgments only insofar as they order consecutive sentencing, and remand for a new sentencing hearing solely to determine whether consecutive sentencing should be imposed.

## Tenn. R. App. P. 3, Appeal as of Right;
## Judgment of the Criminal Court Affirmed in Part, Reversed in Part and Remanded

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, Jr., joined.

William D. Massey and Lorna S. McClusky, Memphis, Tennessee (on appeal); and Alan Chambers and Handel R. Durham, Jr., Memphis, Tennessee (at trial), for the appellant, Craig Abston

Robert E. Cooper, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; Paul Hagerman, Assistant District Attorney General; Valerie Smith, Assistant District Attorney General, for the Appellee, the State of Tennessee

## OPINION

Although Defendant does not challenge the sufficiency of the evidence to convict him of one count of second degree murder and two counts of attempted second degree murder, a brief overview of the facts is necessary to address the issues raised on appeal.

## I. Background

Defendant and the victim were involved in a car accident on the night of October 5, 2001. The victim was driving a red Crown Victoria and was rear-ended by the driver of a blue sedan in which Defendant was riding when the victim tried to make a turn. Both drivers got out of their vehicles to inspect the damage. Defendant also got out of the backseat on the driver's side of the blue car after the accident occurred. Brian Sanders and Joseph Topps were riding in the car with the victim when the accident occurred. Mr. Sanders saw the victim and Defendant get out of their respective vehicles to inspect the damage. He then heard the victim say, "You hit my car," and Defendant responded, "So what, we hit your car, Hoover Crip." Mr. Sanders heard Defendant repeat this several times as the victim opened the door to get back in the car. Defendant kept talking and the victim got back out of the car, and Mr. Sanders heard gunfire. Mr. Sanders did not see the shooting, but did identify Defendant as the person who got out of the backseat of the blue car and yelled at the victim. Mr. Topps testified to the same details and also did not know who from the blue car fired the gunshots. The only identifying feature Mr. Topps saw was that the shooter had two gold teeth.

Don Cottrell was driving a vehicle which was two cars behind the victim's red car on the night of the incident. He saw the victim's car try to turn, and that it was rear-ended by the blue car in which Defendant was riding. Both drivers got out of their vehicles and inspected the damage. The victim got back into his car like the accident was "no big deal" and the driver of Defendant's car also returned to his vehicle. The blue car then pulled up next to the driver of the red car and Mr. Cottrell saw shots being fired from the back seat on the driver's side of the blue car. Mr. Cottrell did not see anyone in the red car with a weapon.

The victim died of a 9 millimeter gunshot wound to his chest. The Defendant's father, Gregory Abston, was asked by his stepson and Defendant's brother, Renarld Gardner, to dispose of a 9 millimeter handgun in October 2001. Mr. Abston threw the gun off a bridge into the Mississippi River.

Sergeant Nathan Berryman took Defendant's statement with his mother present. Defendant was sixteen at the time of the incident. Defendant stated that after the wreck the victim pulled out a gun and shot at them, so Defendant grabbed his brother's gun from underneath the seat and fired back. He stated that he was not looking where he shot and thought he fired about seven shots. Sergeant Berryman testified that when he interviewed Defendant, Defendant had two gold caps on his teeth.

## II. Analysis

On appeal, Defendant contends that the trial court erred in its remarks to the jury venire, that the trial court erred in allowing the testimony of Sergeant Berryman regarding Defendant's gold teeth, and that the trial court erred in imposing consecutive sentences.

A. Remarks to the Jury Venire

Defendant contends that the trial court erred by informing the jury venire that the prosecutor represented the people of the State and that they (the jury venire) were obligated to convict Defendant if they found the State presented proof of guilt beyond a reasonable doubt. Defendant did not object to either of these statements at trial, but now contends that both statements constitute error. By failing to make a contemporaneous objection at trial, Defendant waives appellate consideration of the issues, See State v. Thompson, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000), unless the errors rise to that necessary for this Court to conduct a plain error analysis.

Accordingly, we must review his arguments under the doctrine of "plain error." Tenn. R. Crim. P. 52(b); State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). An error which has affected the substantial right of a defendant may be noticed at any time in the discretion of the appellate court where necessary to do substantial justice. State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). There are five factors which must be present for a court to determine "plain error" exists:

> (a) the record must clearly establish what occurred in the trial court;
>
> (b) a clear and unequivocal rule of law must have been breached;
>
> (c) a substantial right of the accused must have been adversely affected;
>
> (d) the accused did not waive the issue for tactical reasons; and
>
> (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (citing Adkisson, 899 S.W.2d at 641-42). Complete consideration of all five factors is unnecessary if at least one is absent. Id. at 283. Furthermore, the plain error must be such that it probably changed the outcome of the trial. Id.

In the instant case, neither statement by the trial court satisfies the elements necessary for us to determine whether "plain error" exists. While the record does establish clearly the statements that were made by the trial court, there is no clear and unequivocal law that was breached by these statements. This Court has previously addressed a claim by a defendant regarding the statement that the prosecutor represented the people of the State. See State v. Pamela Maxine Bogle, No. 86-258-III, 1987 WL 15193, at *5 (Tenn.Crim. App., at Nashville, Aug. 7, 1987) ,perm. to app. denied, (Tenn. Nov. 9, 1987). In Bogle, the prosecutor, in his closing argument stated, "But what we [lawyers] do is, we represent one side or the other, and I represent the people of the State of Tennessee. And the people - not [the prosecutor], but the people of the State of Tennessee, are asking you to find her guilty." Bogle, 1987 WL 15193, at *5. This Court determined that the

comment made to the impaneled jury during closing argument was not unfairly prejudicial. Id. In the instant case, the comment, while made by the trial court and not the prosecutor, was made to the jury venire before voir dire, before impaneling of the jury, and before closing argument. Given the decision in <u>Bogle</u> and the timing of the trial court's remarks, we are unable to conclude that the statement that the prosecutor "represents the State of Tennessee" breaches a clear and unequivocal rule of law, adversely affects a substantial right of Defendant, or that consideration of it is "necessary to do substantial justice."

The second statement at issue occurred when the trial court, in its remarks to the jury venire, stated that if they determined the State proved its case beyond a reasonable doubt they were obligated to convict. The trial court also informed the jury they were obligated to acquit if they determined the State did not prove its case beyond a reasonable doubt. Assuming, arguendo, that it was error for the trial court to use the word "obligated" that error was negated when the trial court instructed the impaneled jury in the jury charge. In the jury charge, the trial court instructed the jury that "if you should find beyond a reasonable doubt that the defendant is guilty of this offense . . . your verdict should be guilty. . . . If you find the defendant not guilty of this offense, or if you have reasonable doubt of his guilt of this offense, you will acquit him thereof ." Any implication that the trial court had directed the jury to find one way or another in the opening remarks to the venire was rectified by the instructions in the formal jury charge. Further, any error committed by the trial court does not give rise to plain error review by this Court. Accordingly, Defendant is not entitled to relief as to these statements at issue.

B. Sergeant Berryman's Testimony

Defendant contends that the trial court erred by allowing Sergeant Berryman to testify that when he interviewed Defendant, he thought he remembered Defendant having two gold teeth. The testimony at issue was as follows:

ASSISTANT DISTRICT ATTORNEY: Do you know anything about his appearance that day?

SERGEANT BERRYMAN: Nothing that - I think he had two gold caps on his teeth.

Defendant objected based on relevance. At a bench conference, the defense counsel argued that the testimony was not relevant because Sergeant Berryman had already identified Defendant as the person he interviewed in regard to the shooting on October 5, 2001. The State agreed to this statement of fact but further argued the proof was relevant because Sergeant Berryman only identified the person he interviewed and that this testimony related to the person seen shooting at the scene of the incident. The State informed the trial court that it expected at least one and possibly two other witnesses to testify that the shooter that evening had two gold teeth. The defense counsel then argued that Defendant admitted to shooting a gun that evening but that it was in self-defense and the real message the State was trying to present to the jury was "gold teeth as it's associated with young black men." The trial court concluded the testimony was relevant because it went to the

identity of the shooter. Joseph Topps later testified that the person he saw shoot a gun that evening had two gold teeth.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence which is not relevant is not admissible. Tenn. R. Evid. 402. Relevance is determined by the issues presented for resolution in the trial which, in turn, are determined by the elements of the offense charged and the defense asserted by the accused. State v. Dubose, 953 S.W.2d 649, 653 (Tenn. 1997). The standard of review of admissibility of evidence under Tennessee Rules of Evidence 401 and 402 is abuse of discretion. Id. at 652. In the instant case, the trial court did not abuse its discretion when it determined that the State had the right to submit testimony to the jury that when Sergeant Berryman interviewed Defendant he had two gold teeth. Any inferences drawn from this testimony were well within the prerogative of the jury. See Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958); See also State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). Thus, Defendant is not entitled to relief as to this issue.

Defendant, on appeal, argues that Sergeant Berryman's testimony should not have been admitted because he lacked the requisite personal knowledge to make the statement. However, since Defendant cannot change theories from the trial court to the appellate court, this issue is waived. State v. Dooley, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000). Accordingly, Defendant is not entitled to relief as to this issue.

C. Consecutive Sentencing

Defendant's next argument is that the trial court erred when it ordered his sentences to run consecutively to each other because the trial court failed to establish that Defendant was a dangerous offender.

A trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b); See also State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). Furthermore, in the event the trial court finds defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

In the instant case, the trial court failed to state its reasoning for imposing consecutive sentencing. The State asks us to infer from the record that the trial court imposed consecutive sentencing because it found Defendant to be a "dangerous offender;" however, there is no specific language in the record that supports this inference. Accordingly, we remand this case to the trial court for a new sentencing hearing solely for the purpose of addressing the issue of consecutive sentencing.

D. The Effect of the Blakely and Cunningham Decisions

Defendant lastly argues that his consecutive sentence violates Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). We must also review the length of the sentences imposed in light of Blakely.

At the time of the offenses, Tennessee Code Annotated section 40-35-210(c), (d) provided:

(c) The presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. The presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors.

(d) Should there be enhancement but no mitigating factors for a Class B, C, D, or E felony then the court may set the sentence above the minimum in that range but still within the range. Should there be enhancement factors but no mitigating factors for a Class A felony, then the court shall set the sentence at or above the midpoint of the range . . . .

As a Range I standard offender convicted of murder in the second degree, a Class A felony, Defendant is subject to a sentence between fifteen and twenty-five years. T.C.A. § 40-35-112(a)(1). The presumptive sentence for Defendant is twenty years. As a Range I standard offender convicted

of attempted second degree murder, a Class B felony, Defendant is subject to a sentence of between eight and twelve years. Id. § 40-35-112(a)(2). The presumptive sentence is the minimum sentence of eight years.

In Blakely, the United States Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, 542 U.S. at 301, 124 S. Ct. at 2536 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000). The Apprendi court noted that nothing "suggests that it is impermissible for judges to exercise discretion - taking into consideration various factors relating both to offense and offender - in imposing a judgment within the range prescribed by statute." Apprendi, 530 U.S. at 481, 120 S. Ct. at 2358. In a later case the Supreme Court held , "if a State makes an increase in a defendant's authorized punishment contingent on a finding of fact, that fact - no matter how the State labels it - must be found by a jury beyond a reasonable doubt." Ring v. Arizona, 536 U.S. 584, 602, 122 S. Ct. 2428, 2439, 153 L. Ed. 2d 556 (2002).

In Blakely, the Supreme Court defined the terminology of the "statutory maximum" as applied in Apprendi. The Court clarified that the statutory maximum "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 524 U.S. at 302, 124 S. Ct. at 2537. The Supreme Court again restated this holding in Cunningham.

In Cunningham, California's sentencing scheme (known as DSL, determinate sentencing law) provided for three precise terms of imprisonment - lower, middle, and upper. The defendant in that case was sentenced to the upper term after the trial court found aggravating circumstances. The California Penal Code controlled the judge's choice and provided that "the court shall order imposition of the middle term unless there are circumstances in aggravation or mitigation of the crime." Cal. Penal Code § 1170(b) (West Supp. 2006). The circumstance in aggravation only needed to be established by a preponderance of the evidence. Cunningham, 549 U.S. at 288, 127 S. Ct. at 868. The Supreme Court held, "[B]ecause circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt, . . . the DSL violates Apprendi's bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Id. (citing Apprendi, 530 U.S. at 490, 120 S. Ct. at 2348).

In State v. Gomez, 239 S.W.3d 733 (Tenn. 2007) (Gomez II), our Supreme Court reviewed the defendants' sentencing claims under plain error anaylsis. Gomez II, 239 S.W.3d at 737 . Rule 52 of the Tennessee Rules of Criminal Procedure provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of an accused at any time, even though the error was not raised in a motion for new trial or assigned as error on appeal." Relief is granted under plain error review "only where five prerequisites are met: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial

justice." Id. (quoting State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).

In the instant case, the record clearly establishes what occurred in the trial court in determining the length of Defendant's sentences, and thus the first prerequisite is met. The trial court sentenced Defendant to twenty years for Count 1, twelve years for Count 2, and eight years for Count 3. While the trial court did not enhance Defendant's sentence for Count 2 based on a specific factor, it did sentence him to the statutory maximum of twelve years. Neither Blakely nor Cunningham forbid the enhancement of a sentence due to prior convictions, but Defendant does not have a criminal record. Therefore, for the foregoing reasons, we reduce Defendant's sentence for Count 2 to the presumptive sentence of eight years.

The United States Supreme Court has held that Blakely does not impact consecutive sentencing. Oregon v. Ice, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). Our Supreme Court has also held that Blakely does not impact consecutive sentencing. The Court stated that the "decision whether to impose consecutive sentences for multiple crimes is a decision about the manner in which a defendant serves his or her multiple punishments." The Court further held: "Apprendi and Blakely simply do not require a jury to determine the manner in which a defendant serves multiple sentences." State v. Allen, 259 S.W.3d 671, 689-90 (Tenn. 2008). Defendant is not entitled to relief as to this issue.

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed in part, reversed in part, and remanded in part for a new sentencing hearing solely for the purpose of addressing the issue of consecutive sentencing.

_____
THOMAS T. WOODALL, JUDGE